**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | CR 06-442-PCT-JAT |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Felix Kindelay, Jr., ) | |
| Defendant. ) | |

Pending before this Court is Defendant's Motion to Suppress, which seeks to suppress all evidence obtained by the officers as a result of their contact with the Defendant. Defendant argues that there was no reasonable suspicion to initiate contact with him, therefore, the contact with Defendant and seizure of Defendant was unlawful. The Government argues that Defendant volunteered to be searched, therefore the search was lawful and suppression is not justified.

**FACTS**

On October 27, 2006, this Court held an evidentiary hearing regarding the circumstances surrounding Defendant's contact with officers. Agent Hansen and Mr. Kindelay both testified at the hearing. The Court finds the facts to be as follows.

On February 11, 2005, two officers were called to a service station to investigate a fight. When the officers arrived at the service station, there was not a fight. During this time, Defendant was at the service station in a truck. At approximately the same time the

1 officers arrived at the service station, Defendant exited his truck and began walking toward
2 the officers. Defendant said he was walking toward his wife's car, which was the same
3 direction as the officers.

4 When Defendant began approaching the officers, the officers observed that he was
5 wearing a red bandana (which is a indicator of gang membership), appeared nervous, was
6 sweating even though the weather was cool, and appeared to be under the influence of
7 something. The officers then engaged Defendant in conversation regarding gang activity
8 (Defendant testified that the conversation focused on the driver of the vehicle that dropped
9 off Defendant.)

10 The officers continued to have conversation with Defendant. During this
11 conversation, Defendant repeatedly reached for his pocket. Once Defendant started reached
12 for his pocket, agent Hansen testified that the officers then noticed a bulge in the pocket.
13 The officers repeatedly instructed Defendant to keep his hands away from his pocket. Based
14 on what the officers had earlier observed and continued to observe about Defendant's
15 behavior, and Defendant's continued refusal to keep his hands away from his pocket, the
16 officers placed Defendant's hands against the wall.

17 The officers were intending to perform a *Terry* pat down at this point. However,
18 Defendant said something like, "Go ahead and search me, I'm caught anyway."[1] The officers
19 explained to Defendant that they were not arresting him, but that they were concerned he
20 might have a weapon. Defendant again reached for his pocket, and the officers returned his
21 hand to the wall. Defendant then said, "okay, it's in my pocket" and told the officers that they
22 could remove it from his pocket. The officers removed a plastic bag containing packages of
23 methamphetamine. At the point the officers removed the bag, the bag was partially visible,
24 but the contents of the bag were not visible and whether there were any items in addition to
25 the bag in the pocket was not known.

---

[1] In his testimony, Defendant stated that he advised the officers that they could search him. However, he did not use the exact same phasing as agent Hansen's testimony.

- 2 -

**LAW**

As Defendant notes, Courts have recognized three types of police-citizen encounters: 1) consensual encounters which do not implicate the Fourth Amendment; 2) investigative detentions, which are seizures under the Fourth Amendment, but are of limited scope and duration and must be supported by reasonable suspicion of criminal activity; and 3) arrest, which must be supported by probable cause to be permissible under the Fourth Amendment. *See U.S. v. Ayarza,* 874 F.2d 647, 650 (9th Cir. 1989).

With respect to the first type of encounter, as discussed above, if the officers have a consensual stop or conversation with a citizen, there is no Fourth Amendment issue. Additionally, without Fourth Amendment implications, officers may search a person when such person consents to search, if such consent is voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Whether consent is voluntary is determined by a totality of the circumstances test. *Id.* at 226. In applying this totality of the circumstances test, the Court should consider five factors: 1) whether the defendant was in custody; 2) whether the arresting officers had their guns drawn; 3) whether *Miranda* warnings were given; 4) whether the defendant was told he had the right not to consent; and 5) whether the defendant was told that a search warrant could be obtained. *United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000).

With respect to the second type of encounter, officers may detain a person for investigatory purposes if they have reasonable suspicion. *United States v. Thompson*, 282 F.3d 673, 678 (9th Cir. 2002). "Reasonable suspicion is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *Id.* (internal citations and quotations omitted). In evaluating the lawfulness of a stop, the Court considers the totality of the circumstances, specifically, whether the officers have a particularized and objective basis for suspecting criminal activity on the part of the person stopped. *United States v. Thomas*, 863 F.2d 622, 625 (9th Cir. 1988). The suspicion must be present at the time the officer initiates the stop. *Id.*

1  If during a lawful investigative detention the officers wish to search the person being 2 detained, the government must be able to show more than reasonable suspicion of criminal 3 activity. The government must show that a reasonably prudent person in the circumstances 4 would believe that his or her safety or the safety of others was in danger. *Id.* at 628. Thus, 5 if the initial stop and limited detention is based on reasonable suspicion and the officers have 6 reason to believe that the suspect is armed and dangerous, the officers may do a limited 7 weapons search. *Id.*

**ANALYSIS**

Initially, the officers did not "stop" Defendant. The officers arrived at a service station and Defendant approached them. Thereafter, the officers and Defendant had a conversation about gang activity in the area. The Court finds this initial conversation, during which Defendant initially approached the officers, to be consensual and, therefore, it did not have Fourth Amendment ramifications.

At the hearing, counsel for Defendant argued that this initial discussion between Defendant and officers was a seizure for Fourth Amendment purposes. Further, he argued that this initial detention was unconstitutional, therefore, everything thereafter should be suppressed.

As indicated above, the Court has already found this initial discussion to be consensual and not subject to a Fourth Amendment analysis. However, even if Defendant's testimony that he did not feel free to leave was credible[2] (and the Court does not find that to be credible and instead finds that Defendant was still free to leave when the conversation began), the Court finds the officers had reasonable suspicion that criminal activity was afoote. Therefore, the officers were justified in a brief detention of Defendant. Specifically, the officers had observed the red bandana which they knew from experience was consistent with gang activity. Also, the officers observed Defendant to be sweating despite the cool

---

[2] The test for whether an encounter with police is consensual verses an investigative detention is whether a reasonable person would think he/she was free to leave. *Michigan v. Chesternut*, 486 U.S. 567, 574-75 (1988).

- 4 -

1 tempurature. Additionally, the officers observed Defendant to be nervous. Further, the
2 officers believe Defendant to be under the influence of something based on his bloodshot
3 eyes, his nervousness, and the way his eyes kept darting around. Thus, even if the initial
4 conversation was not consensual, the officers had reasonable suspicion based on Defendant's
5 behavior to stop Defendant for suspicion of criminal activity.

6 While the officers were having this conversation with Defendant, Defendant
7 repeatedly reached for his pocket. Once Defendant started reaching for the pocket, the
8 officers observed a bulge in the pocket. The officers repeatedly advised Defendant to not
9 reach for his pocket. Defendant continued to reach for his pocket despite being told not to
10 do so.

11 Based on the bulge and the fact that Defendant kept reaching for the pocket, the
12 officers became concerned for their safety. Based on this concern, the officers placed
13 Defendant's hands against a wall. This is a seizure for Fourth Amendment purposes. Thus,
14 for this officer activity to be permissible under the Fourth Amendment, the officers must
15 have had reasonable suspicion of criminal activity. *Thompson*, 282 F.3d at 678. At the point
16 the officers placed Defendant's hands against the wall, they had observed that Defendant was
17 wearing a bandana consistent with gang activity, was sweating more than would be expected
18 given the weather, was nervous, appeared to be under the influence of something, had a bulge
19 in his pocket and repeatedly reached for the budge in his pocket despite the officers
20 repeatedly instructing him to keep his hands away from the bulge in his pocket. From all of
21 these facts, the officers had reasonable suspicion of criminal activity, specifically, potentially
22 drug activity or a criminal threat to the officer's safety. Therefore, the was no Fourth
23 Amendment violation for this brief detention.

24 Next, while Defendant's hands were against the wall, Defendant continued to reach
25 for his pocket. The officers returned Defendant's hand against the wall. At this point, the
26 officers did not ask for consent to search Defendant, nor did the officers undertake to frisk
27
28

Defendant.[3] Instead, Defendant began volunteering unsolicited statements, including, "Go ahead and search me, I'm caught anyway" and "okay, it's in my pocket."

As discussed above, there is no Fourth Amendment issue if someone consents to being searched. However, such consent must be voluntary. In this case, the officers never requested consent to search. Defendant volunteered that the officers could search. Applying the factors for consent to whether Defendant's volunteered consent was voluntary,[4] the Court first finds Defendant was not in custody. In fact, in between statements, one officer specifically advised Defendant that he was not under arrest. Thus, while Defendant was temporarily detained because he would not comply with officers' requests to keep his hands out of his pockets, he was not in custody.

Second, the officers did not have their weapons drawn. Third, Defendant was not told his *Miranda* rights, but as indicated above, Defendant was not under arrest. Fourth, Defendant was not told he did not have to consent, but the officers never asked Defendant to search him. Instead the officers asked Defendant what was in his pocket. Defendant twice responded that the officers could remove the contents of his pocket. Fifth and finally, Defendant was not advised that a search warrant could be obtained; however, again since the officers were not requesting to search, this factor does not show the search was not consensual.

Based on the evidence and arguments presented, the Court finds Defendant voluntarily consented to be searched. Thus, when the officers removed the bag with drugs from Defendant's pocket, they did not violate the Fourth Amendment. Because there was no Fourth Amendment violation, the motion to suppress will be denied.

**Accordingly,**

---

[3] The officers could have frisked Defendant under *Terry* for officer safety, but the Court need not reach this issue because the officers did not frisk Defendant. *See Thomas*, 863 F.2d at 628.

[4] *See Cormier*, 220 F.3d at 1112.

- 6 -

1  **IT IS ORDERED** that Defendant's Motion to Suppress (Doc. #15) is denied.

2  DATED this 31st day of October, 2006.

```
                              _____
                              James A. Teilborg
                              United States District Judge
```